IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SI CHAN WOOH,                                    3:11-CV-00593-BR

       Plaintiff,                        OPINION AND ORDER

v.

SCHNITZER STEEL INDUSTRIES, INC.,
and MANUFACTURING MANAGEMENT,
INC.,

       Defendants.


**JANET LEE HOFFMAN**
Janet Lee Hoffman & Associates, LLC
10000 S.W. Broadway, Suite 1500
Portland, OR 97205
(503) 222-1125

       Attorneys for Plaintiff

**PER A. RAMFJORD,**
Stoel Rives LLP
900 S.W. Fifth Avenue, Suite 2600
Portland, OR 97204
(503) 224-3380

       Attorneys for Defendants

1 - OPINION AND ORDER

**BROWN, Judge**.

This matter comes before the Court on Plaintiff Si Chan Wooh's Motion (#5) for Preliminary Injunction.  For the following reasons, the Court **STAYS** the resolution of this matter pending the outcome of an expedited jury trial on Plaintiff's Claim One for Breach of Contract - Damages.

### BACKGROUND

I.  **PLAINTIFF'S COMPLAINT**

   A.  **Factual Allegations.**

Plaintiff alleges he was employed by Defendant Manufacturing Management, Inc. (MMI) as a manager and officer from 1985 and by both MMI and Defendant Schnitzer Steel Ind., Inc. (SSI) from 1995 until September 2006 when he was terminated by both MMI and SSI. During his employment, Plaintiff reported directly to the Chief Executive Officer and Chairman of the Board of SSI.

Plaintiff became a whistle-blower in May 2004 by revealing to SSI's in-house counsel and its compliance officer that SSI had made payments to the purchasing agents of Asian customers for years, potentially in violation of the Foreign Corrupt Practices Act (FCPA), 18 U.S.C. § 371.

SSI cooperated with a resulting federal investigation and believed "it was vital to their interests" for Plaintiff both to cooperate with the government and SSI and to keep SSI "informed

of all facts" and "assist[] in factual development."

SSI's in-house counsel referred Plaintiff to attorney Janet Lee Hoffman to represent him on the pending criminal investigation.  On June 15, 2005, MMI's Board of Directors authorized MMI to indemnify Plaintiff "to the fullest extent not prohibited by law" and "to pay all expenses" that Plaintiff incurred in defending himself.

The indemnification agreement was subsequently memorialized in an Affirmation and Undertaking in Connection with Advancement of Expenses (Undertaking) setting forth the terms by which MMI and SSI agreed to advance expenses incurred by Plaintiff in defending himself.

The Undertaking provided SSI and MMI "would pay [Plaintiff's] expenses, on an ongoing basis, during the pendency of the Investigations and any other proceedings arising out of the same subject matter of the Investigations, and prior to their final dispositions."  The Undertaking also provided:  "In consideration of [MMI and SSI] authorizing such payments," Plaintiff and his counsel would cooperate with MMI and SSI and their attorneys in connection with the government investigations, and Plaintiff would repay all expenses "if it shall be ultimately determined by a court that [he was] not entitled to be indemnified by the Company."

3 - OPINION AND ORDER

Plaintiff signed the Undertaking on July 6, 2005, and alleges he has fully complied with the Undertaking and cooperated with investigations conducted by the government, SSI, and outside counsel.

Based on its cooperation, SSI thereafter was permitted by the government to enter into a deferred prosecution agreement and to pay a $7.5 million criminal fine (which Plaintiff alleges was a favorable outcome for SSI).

On June 29, 2007, Plaintiff pled guilty to one count of Conspiracy to Violate the FCPA.  The government agreed it would recommend at sentencing a 15-level downward departure pursuant to the sentencing guidelines based on Plaintiff's "substantial assistance to authorities" and would not recommend a term of imprisonment.

On May 10, 2010, Plaintiff learned the government would not prosecute SSI's former CEO and Chairman of the Board.  Plaintiff also learned an FBI agent assigned to investigate SSI, MMI, and Plaintiff had recommended to the Department of Justice that Plaintiff should not have been charged with any crime.  Plaintiff's counsel thereafter advised SSI's in-house counsel that Plaintiff intended to seek dismissal of the charges against him.

Defendants continued to advance the legal fees of Plaintiff's counsel through November 2010.  At that time SSI's

in-house counsel informed Plaintiff's counsel that outside counsel had advised SSI that it was unlikely Plaintiff would prevail in having the criminal charges against him dismissed or that he would be permitted to withdraw his guilty plea. In addition, Plaintiff's counsel was advised of SSI's concern that Plaintiff would be unable to reimburse SSI for the advanced fee payments if SSI determined Plaintiff was ineligible for indemnification of those fees pursuant to the Undertaking. Plaintiff's counsel was unsuccessful in her efforts to meet with outside counsel.

On February 2, 2011, Plaintiff's counsel was advised SSI would no longer advance Plaintiff's legal fees and would not pay two outstanding attorneys' fee invoices. This civil action followed (even as the criminal case against Plaintiff remains pending).

### B. <u>Claims for Relief</u>.

**First Claim: Breach of Contract - Damages.**

Plaintiff alleges Defendants have breached their agreement in the Undertaking to pay Plaintiff's past and future legal expenses incurred in defending against the alleged FCPA criminal charges.

**Second Claim: Breach of Contract - Injunctive Relief.**

Plaintiff seeks an injunction prohibiting Defendants from

ceasing to pay Plaintiff's legal expenses through the end of the criminal proceedings against him in light of the alleged immediate and irreparable harm that Plaintiff would suffer if he lost the services of his long-serving, trusted counsel.

**Third Claim: Breach of Contract - Declaratory Relief.**

Plaintiff seeks a Declaratory Judgment that Defendants are required to continue advancing attorneys' fee to Plaintiff until the criminal charges against him are resolved.

## II. DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES

Although Defendants admit Plaintiff's allegations as to the origins of the FCPA investigation and the Undertaking, they deny each of the other allegations in Plaintiff's Complaint.

Defendants also assert the following language in the Undertaking entitled MMI to terminate the payment of attorneys' fees to Plaintiff as long as doing so was "not statutorily prohibited":

> I agree and acknowledge that [MMI] may terminate the further payment of any and all Expense Advances, except to the extent forbidden by the Oregon Revised Statutes. Such termination by [MMI] shall have no effect on this Affirmation and Undertaking and my continued obligation to repay prior Expense Advances to the extent required by this Affirmation and Undertaking.

*See* Def.s' Answer and Affirmative Defenses at ¶ 30; Stip. Ex. 2.

**PRELIMINARY INJUNCTION**

**I.    STANDARDS**

The decision to grant or to deny a motion for preliminary injunction is within the discretion of the court.  *Dish Network Corp. FCC,* 636 F.3d 1139, 1143 (9th Cir. 2011).

Two alternative standards are applied to requests for preliminary injunctions.  *Ranchers Cattleman Action Legal Fund United Stockgrowers of Am. v. United States Dep't of Agric.,* 415 F.3d 1078, 1092 (9th Cir. 2005)(citing *Save Our Sonoran, Inc. v. Flowers,* 408 F.3d 1113, 1120 (9th Cir. 2005)).  An order may be issued under the traditional standard if the court determines plaintiff has shown "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)."  *Ranchers Cattlemen Assoc.,* 415 F.3d at 1093.

The requirement for showing a likelihood of irreparable harm prior to trial increases or decreases in inverse correlation to the probability of success on the merits at trial.  *Diamontiney v. Borg*, 918 F.2d 793, 795 (9th Cir. 1990).  See also *Sun Microsystems, Inc. v. Microsoft Corp.,* 188 F.3d 1115, 1119 (9th Cir. 1999)(these factors represent two points on a sliding

7 - OPINION AND ORDER

scale: "[T]he greater the relative hardship to the moving party, the less probability of success must be shown")(citation omitted). The essence of the court's inquiry is whether the balance of equities favors granting preliminary relief. *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.,* 4 F.3d 819, 822 (9th Cir. 1993).

Courts apply a more exacting standard when the moving party seeks a mandatory as opposed to a prohibitory preliminary injunction. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 879 (9th Cir. 2009)("In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" (citing *Anderson v. U.S.*, 612 F.2d 1112, 1115 (9th Cir. 1979)). Courts should be extremely cautious in issuing mandatory preliminary relief. Such relief is disfavored and should be denied unless the facts and law clearly favor the moving party. *Anderson,* 612 F.2d at 1114.

## II. DISCUSSION

Plaintiff contends he told SSI about alleged illegal foreign payments, SSI then investigated, and SSI thereafter disclosed the payments to the Securities Exchange Commission and the Department of Justice as a strategy to minimize SSI's "exposure to

potentially crippling fines and other liability." Pl.'s Mem. at 4. Plaintiff asserts he was "a crucial part of that cooperation effort" because he "carried out . . . SSI's practice of making commission payments to customers." *Id.* at 5. Plaintiff also asserts SSI knew Plaintiff's cooperation with the government would put him at risk of criminal prosecution under the FCPA. In addition, Plaintiff contends SSI's defense strategy included the indemnification of Plaintiff's legal expenses as set out in the Undertaking.

According to Plaintiff, his cooperation, in fact, led the government to defer prosecution of SSI and to fine SSI "only" $7.5 million even though SSI made $55 million in profit from the illegal foreign payments.

In June 2007 Plaintiff pled guilty to one count of Conspiracy to Violate the FCPA. SSI then asserted its right to cease further payments under the Undertaking on the basis that Plaintiff's guilty plea resolved the criminal case in a manner that made Plaintiff ineligible for further indemnification of attorneys' fees pursuant to the Undertaking. After Plaintiff's counsel objected, SSI resumed payments.

In May 2010 the government informed SSI that it would not prosecute SSI's former CEO. In addition, FBI Agent Joseph LaMonica wrote to the Department of Justice stating that

Plaintiff should not have been charged in the criminal case and recommending that the government dismiss the charges.

Based on these developments, Plaintiff's counsel advised SSI's counsel, Rich Josephson, later in May 2010 that Plaintiff would seek dismissal of the charges against him. SSI's counsel then advised Hoffman that he had instructed SSI's insurance carrier to continue funding Plaintiff's legal expense through the remainder of the criminal proceedings.

In November 2010, however, George Terwilliger, another one of SSI's counsel, advised Josephson that he did not believe Plaintiff would be allowed to withdraw his guilty plea and would likely be unable to reimburse legal expenses previously paid by SSI if SSI determined that Plaintiff was ineligible for indemnification under the Undertaking. SSI then stopped advancing defense funds to Plaintiff, which, according to Plaintiff, has jeopardized his defense in the still-pending criminal case.

### A.   **Substantial Likelihood of Success on the Merits**.

Plaintiff seeks a mandatory injunction requiring SSI to pay Plaintiffs's legal fees for services rendered in the future. Plaintiff, therefore, must establish he has a "substantial likelihood" of succeeding on the merits of his claim against Defendants. *See Marlyn Nutraceuticals*, 501 F.3d at 879.

Defendants assert Plaintiff is not likely to succeed on the merits of his claim because Defendants were free pursuant to the Undertaking to cease advancing legal payments to him at any time for any reason not barred by Oregon statute.

Plaintiff, in turn, asserts his allegations raise serious questions as to the merits of his claims for breach of contract. Specifically, in the context of the Undertaking as a whole, Plaintiff contends SSI's putative freedom to cease paying Plaintiff's legal fees for any reason whatsoever would render the Undertaking meaningless and illusory and also defeat the reasonable expectations of the parties. Plaintiff contends the provision for termination of payments for legal fees referred to in the Undertaking pertains to "further payments" other than those payments for services rendered through February 2011, which is the date when SSI first notified Plaintiff that it was going to cease making such payments. Plaintiff, in effect, asserts he kept his part of the bargain by cooperating with the government, and he had a reasonable expectation that Defendants would honor the Undertaking by paying his legal fees. According to Plaintiff, the equities, therefore, favor Plaintiff.

It is difficult to assess the likelihood of Plaintiff's chances to establish a "substantial likelihood of success on the merits" without definitely resolving the meaning of the Undertaking as to whether Defendants are, in fact, free to

11 - OPINION AND ORDER

withdraw from performing at any time and for any reason. The language Defendants used in drafting the Undertaking, which permitted them to withdraw payments covering the cost of Plaintiff's defense at any time, suggests their agreement to make the legal payments was voluntary and not based on any legal duty. On the other hand, it appears that SSI and MMI intended to seek and actually obtained substantial benefits in their dealings with the government based in part on Plaintiff's cooperation with the government, which then placed Plaintiff in criminal jeopardy. If SSI and MMI were free to cease advancing Plaintiff's defense costs for any random reason regardless of the benefits they obtained from Plaintiff's conduct, their agreement to pay Plaintiff's defense costs could be illusory.

For these reasons, the Court concludes the literal terms of the Undertaking are, at the very least, ambiguous in regard to this issue. In light of the continued pendency of the criminal case against Plaintiff, the Court also concludes the ambiguity as to the respective obligations of the parties pursuant to the Undertaking and, in particular, as to the right of SSI to terminate payments prematurely regardless of the benefits conferred on it by Plaintiff's ongoing cooperation with the government needs to be resolved promptly and definitively by a trier-of-fact; *i.e.*, a jury.

Accordingly, as noted at oral argument, the Court shall convene a jury trial promptly as to this issue.

### B. Possibility of Irreparable Injury.

Plaintiff's counsel asserts she will have to withdraw as counsel for Plaintiff if SSI does not reimburse the attorneys' fees that she reasonably incurred in defending Plaintiff against the government's charges because nonpayment of her attorneys' fees for services rendered would interfere with her personal interests and prevent her from continuing to represent Plaintiff under Oregon's Rules of Professional Conduct.

In addition, counsel argues she will, in effect, have agreed to a contingency fee (*i.e.,* SSI would only reimburse her fees if Plaintiff prevailed against the government's charges), which is a fee arrangement that is not permitted in criminal cases. *See Caplan & Drysdale, Chartered v. U.S.,* 491 U.S. 617, 633, n.10 ("contingent fees in criminal cases are generally considered unethical."). *See also Or. R. of Professional Conduct* 1.5(c)(2)("A lawyer shall not enter into an arrangement for, charge or collect . . . a contingent fee for representing a defendant in a criminal case.").

Moreover, Plaintiff asserts if his counsel is forced to resign because her attorneys' fees are not paid, Plaintiff will be deprived of his Sixth Amendment right to the counsel of his choice. Although counsel's resignation may or may not give rise

13 - OPINION AND ORDER

to a Sixth Amendment violation, Plaintiff asserts the loss of his counsel's services at this stage of the criminal proceedings will irreparably harm him in light of counsel's role in his defense against the government's charges over a six-year period and the fact that he is scheduled for sentencing on his guilty plea in the near future.

On this record the Court agrees Plaintiff may be disadvantaged, possibly irreparably, if his present counsel is unable to continue her representation.

### C. **Balance of Hardships**.

SSI does not argue that the balance of hardships in this matter favors SSI.  SSI merely states any injury to Plaintiff is speculative.  On this record, this factor strongly favors Plaintiff.

### D. **Public Interest**.

Plaintiff asserts the scarcity of federal funding for court-appointed counsel suggests the public interest favors requiring Hoffman to continue her representation of Plaintiff and to be paid for her services by SSI pursuant to the Undertaking.  SSI, in turn, contends the public interest weighs against Plaintiff because an injunction would "undermine the public policy favoring voluntary indemnification of corporate employees."

At its core this matter involves an agreement by a private employer to reimburse the legal expenses incurred by one of its

employees who was purportedly acting in the scope of his employment.  Although there may a "public interest" in the nature of the alleged criminal conduct that is at the heart of this matter, the dispute between the parties here is essentially a private, contractual dispute; *i.e.,* there is not a "public interest" to be considered in its resolution.

In summary, the Court concludes the language in the Undertaking as to SSI's continuing obligation to reimburse Plaintiff's legal expense is ambiguous.  That ambiguity necessarily must be resolved before deciding whether Plaintiff has established a substantial likelihood of prevailing on the merits of his claims against Defendants.

Accordingly, the Court **STAYS** Plaintiff's Motion (#5) for Preliminary Injunction pending the outcome of a jury trial to resolve the intentions of the parties at the time they entered into the Undertaking as to this disputed issue.

IT IS SO ORDERED.

DATED this 11th day of July, 2011.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　ANNA J. BROWN
　　　　　　　　　　　　　　　　　　　United States District Judge